**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DR. STEVEN RHODES,

        Plaintiff,

v.                                     Case No.  3:18-cv-673-J-34JBT

DETECTIVE PAUL ROBBINS, in his
individual capacity,

        Defendant.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant Paul Robbins' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 23, Motion), filed August 20, 2018.  In the Motion, Robbins requests that the Court dismiss Plaintiff, Steven Rhodes' Third Amended Complaint and Demand for Jury Trial.  See Doc. 22 (Third Amended Complaint).  In his Third Amended Complaint, Rhodes asserts that Robbins violated his Fourth Amendment right to be free of unreasonable seizures when Robbins allegedly made false statements in and omitted material information from his application for a warrant for Rhodes' arrest. Third Amended Complaint at ¶ 34.  Robbins seeks dismissal of Rhodes' Third Amended Complaint arguing that Rhodes has failed to state a claim upon which relief may be granted.  Motion at 1.  Rhodes opposes Robbins' Motion.  See Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 26, Response), filed September 4, 2018.  Accordingly, this matter is ripe for review.

## I.	Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not

entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[1]

Rhodes is a chiropractic physician licensed by the state of Florida. Third Amended Complaint at ¶ 4. Robbins, a "law enforcement detective with the Florida Department of Insurance Services, Division of Insurance Fraud," initiated an investigation against Rhodes, which culminated in his arrest of Rhodes for insurance fraud. Id. at ¶¶ 5, 11. "Ultimately . . . [however,] the State of Florida declined to prosecute" Rhodes. Id. at ¶ 32.

More specifically, "[a]cting on tips from a disgruntled former patient and a man jealous of [Rhodes] because [Rhodes] dated the man's former girlfriend, [Robbins] began to investigate [Rhodes] in February of 2014." Id. at ¶ 7. After about a two-month investigation, Robbins "presented an affidavit for arrest warrant to Duval County Judge John Moran." Id. at ¶ 9. The Judge issued the arrest warrant, and Robbins subsequently arrested Rhodes for "seven counts of making false and fraudulent insurance claims in violation of [Florida Statutes] § 817.234(1)(a)1, and one count of schemes to defraud in violation of [Florida Statutes] § 817.034(4)(a)3." Id. at ¶¶ 10-11.[2] However, "the warrant

---

[1] In considering Robbins' Motion, the Court must accept all factual allegations in Rhodes' Third Amended Complaint as true, consider the allegations in the light most favorable to Rhodes, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Third Amended Complaint, and may well differ from those that ultimately can be proved.

[2] Florida Statutes section 817.234(1)(a)1 states that

> [a] person commits insurance fraud . . . if that person, with the intent to injure, defraud, or deceive any insurer:
>
> 1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy or a health

affidavit presented to Judge Moran . . . was full of false statements and material omissions which would have vitiated any probable cause to arrest Dr. Rhodes for the crimes alleged." Id. at ¶ 12.

In particular, Robbins stated in his affidavit (Affidavit for Arrest Warrant) that he interviewed seven of Rhodes' patients regarding the doctor's potential practice of overbilling them for insurance fraud purposes. Id. at ¶¶ 13, 14. However, four of these patients "have flatly denied what [Robbins] alleges he was told by them during their interviews. Therefore, [Robbins'] inclusion of any alleged fraud by [Rhodes] relating to these patients was knowingly false." Id. at ¶ 13. As to the three other interviewed patients, Robbins omitted allegedly relevant information from the Affidavit for Arrest Warrant.

For instance, the Affidavit for Arrest Warrant, which was dated April 3, 2014, reported that one patient, "D.B.," "indicated she had been pregnant since May of 2013, so her insurance company should not have been billed for a particular treatment which would have ceased being administered upon her advising [Rhodes] of her pregnancy." Id. at ¶ 15. However, D.B.'s "medical records, of which [Robbins] had copies, reflect that she did not advise [Rhodes] of her pregnancy until August of 2013." Id. Moreover, D.B.'s child was born in April of 2014. Id. Thus, Robbins' report in the Affidavit for Arrest Warrant that D.B. had been pregnant in May of 2013, and up through the date of the Affidavit for

---

maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim.

FLA. STAT. § 817.234(1)(a)1. Likewise, section 817.034(4)(a)3 of the Florida statutes directs that [a]ny person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud, punishable as follows: . . .

3. If the amount of property obtained has an aggregate value of less than $20,000, the violator is guilty of a felony of the third degree . . . .

Id. at § 817.034(4)(a)3.

Arrest Warrant, suggested that D.B. had been pregnant for eleven months.  Id.  Likewise,

Rhodes alleges that patient "O.V."

> claimed that she was billed for certain services that she claims were not
> performed.  However, . . . O.V. had an independent medical examination . .
> . done by another doctor in November of 2013 and during that evaluation (a
> copy of which Defendant possessed), she stated to that doctor that she was
> receiving the treatments at issue on a regular basis.

Id. at ¶ 16.   Finally, patient "B.L." "allegedly informed [Robbins] she had not received

certain treatments . . . . Yet, she signed paperwork at [Rhodes'] office (a copy of which

[Robbins] possessed) attesting the services 'were actually rendered,' which in fact they

were."  Id. at ¶ 17.  Robbins intentionally omitted all of this information regarding patients

D.B., O.V., and B.L. from the Affidavit for Arrest Warrant in support of Rhodes' arrest.  Id.

at ¶¶15-17.

In his Third Amended Complaint, Rhodes further alleges that Robbins "conducted

his investigation with a total disregard and misunderstanding of the law." Id. at ¶ 18.  First,

Robbins' Affidavit for Arrest Warrant claimed that Rhodes billed insurance companies for

certain forms of manual therapy, coded for billing purpose as CPT 97140, but did so

unlawfully because unlicensed massage therapists performed those services.  Id. at ¶

19.[3]  However, Robbins allegedly overlooked Florida law which permits a chiropractic

physician to "bill for such manual physical therapy when it is performed by medical

assistants incidental to the practice of the physician."  Id. at ¶ 22.  Therefore, Rhodes

alleges that Robbins was simply wrong to claim that Rhodes "violated the law by billing

for manual therapy."  Id. at ¶ 23.

---

[3] "CPT" code references "Current Procedural Technology," which is "maintained by the American Medical
Association," and is commonly used for medical billing purposes.  Third Amended Complaint at ¶ 20.

In his Affidavit for Arrest Warrant, Robbins also asserted that Rhodes violated the law by overbilling "for units of manual therapy," id. at ¶ 24, in that Rhodes would "bill for two units of manual therapy when only one was provided." Id. at ¶ 25. Robbins apparently reached this conclusion based on reports from Rhodes' patients as well as a therapist who worked for Rhodes. Id. at ¶ 28. However, Rhodes alleges that Robbins and the therapist employee, "operated under the incorrect belief," id., that Rhodes' billing practices were unlawful, where in fact his billing practices were fully compliant with insurance practices. Id. at ¶ 27. Robbins' Affidavit for Arrest Warrant did not include any information about appropriate billing practices in accordance with insurance norms. Id. at ¶ 29. Ultimately, while Robbins arrested Rhodes pursuant to a warrant obtained based upon the statements in the Affidavit for Arrest Warrant, the state decided not to prosecute Rhodes. Id. at ¶ 32.

Based on the foregoing allegations, Rhodes filed the instant action against Robbins pursuant to 42 U.S.C. § 1983 asserting Robbins violated his Fourth Amendment right to be free from unreasonable seizures. Id. at 6. Rhodes alleges that Robbins "knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for the warrant for [Rhodes'] arrest, and such statements or omissions were necessary to the finding of probable cause to issue said warrant." Id. at ¶ 34. Rhodes further alleges that

> [w]ithout [Robbins'] false statements and/or material omissions there was not probable cause or arguable probable cause for issuance of a warrant for [Rhodes'] arrest. As a result of the warrant procured by [Robbins], [Rhodes] was arrested without probable cause or even arguable probable cause. Therefore, [Robbins] instituted, commenced, and/or continued prosecution against [Rhodes]. [Robbins] did so with malice and without probable cause. The prosecution commenced, continued, and/or instituted by [Robbins] against [Rhodes] with malice and without probable cause

terminated in Plaintiff's favor. [Robbins'] malicious prosecution of [Rhodes] deprived [Rhodes] of his Fourth Amendment right to be free from unreasonable seizures.

Id. at ¶¶ 36-40. In response to Rhodes' allegations, Robbins filed his Motion, to which Rhodes has responded.

### III.    Arguments of the Parties

In his Motion, Robbins generally asserts that Rhodes' Third Amended Complaint should be dismissed because Robbins is entitled to qualified immunity. Motion at 3. Robbins first argues that Rhodes' allegations that Robbins included falsities in the Affidavit for Arrest Warrant are at best conclusory. Id. at 6. Second, Robbins asserts that to the extent he arrested Rhodes based on a misunderstanding of insurance fraud law, the totality of the circumstances nonetheless supported his determination of probable cause to arrest Rhodes. Id. at 6-7. In this regard, Robbins asserts that that the Affidavit "contains sufficient statements that a reasonable officer in [his] circumstances would have believed there was probable cause to charge" Rhodes with various counts of insurance fraud. Id. at 8-9. Third, Robbins construes Rhodes' charge against him as a false arrest claim, and thus contends that this claim should be dismissed because Robbins arrested Rhodes pursuant to a warrant. Id. at 9-10. Finally, Robbins argues that the Court should dismiss Rhodes' action because Robbins was performing investigatory duties under Florida law, id. at 5, and "[u]nder Florida law, individual officers are immune from individual liability for tort claims that occurred in the scope of their employment." Id. at 10.

In his Response, Rhodes rejects Robbins' assertion that he is entitled to qualified immunity. Response at 1-2. In doing so, Rhodes argues that he sufficiently alleges that Robbins included falsities in the Affidavit for Arrest Warrant. Id. at 4. In light of the alleged

falsities in the affidavit, Rhodes contends that Robbins cannot establish he had actual or arguable probable cause to arrest Rhodes. Id. at 5-6. Rhodes further argues that contrary to Robbins' characterization of this civil rights action, Rhodes "does not allege a false arrest in his Complaint, but instead asserts a claim against [Robbins] for malicious prosecution." Id. at 6. Moreover, he asserts that Robbins' misunderstanding of insurance law "can be deemed nothing other than plainly incompetent." Id. at 4. Finally, Rhodes argues that Robbins cannot rely on Florida law to support his claim for qualified immunity. Id. at 3, 7-8.

## IV.    Legal Framework

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must sufficiently allege that he or she was "'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted). Here, in Rhodes' Third Amended Complaint, Rhodes seeks relief under § 1983 against Robbins for a "Fourth Amendment Violation [of] Unreasonable Seizure." Third Amended Complaint at 6. More specifically, he alleges that Robbins "knowingly and deliberately, or with reckless disregard of the truth, [made] false statements or material omissions in his application for the warrant for [Rhodes'] arrest, [where] such statements or omissions were necessary to the finding of probable cause to issue said warrant." Id.

at ¶ 34.  In response to this allegation, Robbins asserts that he is entitled to qualified immunity.

The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As a result, this defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'"[4] Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful."  Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

In order to be entitled to qualified immunity, the defendant must first establish that his conduct was within the scope of his discretionary authority.  See Webster v. Beary, 228 Fed. Appx. 844, 848 (11th Cir. 2007) (per curiam); Lee, 284 F.3d at 1194.  Neither party contends that Robbins was acting outside the scope of his discretionary authority when he obtained the arrest warrant and subsequently arrested Rhodes.[5] See Lee, 284

---

[4] In determining whether a defendant is entitled to qualified immunity, the court views the facts and all reasonable inferences in the light most favorable to the plaintiff to the extent supported by the record, and then considers "the legal issue of whether the plaintiff's 'facts,' if proven, show that the defendant violated clearly established law." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000); Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

[5] "'A government official acts within his discretionary authority if the actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority.'" Jones v. City of Atlanta, 192 Fed. Appx. 894, 897 (11th Cir. 2006) (per curiam) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).  In citing to Jones, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally FED. R. APP. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding

9

F.3d at 1194 (finding that "there can be no doubt that the [officer] was acting in his discretionary capacity when he arrested [the plaintiff]" even though the plaintiff asserted that the officer used excessive force in effectuating the arrest). Therefore, the burden shifts to Rhodes "to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194. To do so, Rhodes must establish two elements: (a) that Robbins violated a constitutional right, and (b) the right violated was clearly established. Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may consider these elements in whichever order it chooses, and qualified immunity will protect the defendant if the plaintiff fails to establish either element. Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim . . . ." Brown, 608 F.3d at 734. However, when an individual is arrested pursuant to a warrant, and where that individual asserts the warrant was invalid, the Eleventh Circuit has directed that the proper claim for relief is that of malicious prosecution, rather than false arrest. See Carter v. Gore, 557 Fed. Appx. 904, 906 (11th Cir. 2014) ("The issuance of a warrant – even an invalid one . . . – constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest."); Harris v. Johnson's Giant Foods, Inc., No. 2:16-cv-1646-RDP, 2017 WL 6336330, at *5 (N.D. Ala. Dec. 12, 2017) (arrest pursuant to a warrant, albeit allegedly invalid, gives rise to a malicious prosecution claim).

---

precedent, but they may be cited as persuasive authority.").

A § 1983 malicious prosecution claim requires a plaintiff to prove "a violation of his Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution." Zargari v. United States, 658 Fed. Appx. 501, 506 (11th Cir. 2016). The essential elements of a Florida common law malicious prosecution claim include:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

Id. at 506 n.2 (quoting Alamo Rent-A-Car v. Mancusi, 632 So.2d 1352, 1355 (Fla. 1994)). The Eleventh Circuit has recognized that a law enforcement officer who makes an arrest pursuant to a warrant can be liable for malicious prosecution in at least two circumstances. First, a malicious prosecution claim can arise when an officer secures a warrant under circumstances in which a reasonably well trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994) (quoting Malley, 475 U.S. at 345); see also Carter, 557 Fed. Appx. at 908. Second, the court has recognized a malicious prosecution claim if the officer presented materially false statements or omissions in an affidavit in support of the arrest warrant. Kelly, 21 F.3d at 1554; see also Carter, 557 Fed. Appx. at 907-08.

In considering whether an officer had probable cause to seek an arrest warrant, the Eleventh Circuit instructs:

> [f]or probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

Lee, 284 F.3d at 1195 (quotation and internal quotation marks and citation omitted). However, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown, 608 F.3d at 734. Accordingly, the dispositive question for qualified immunity purposes "is not whether actual probable cause existed; rather, the question is whether the officer had 'arguable' probable cause." Carter, 557 Fed. Appx. at 908; see also Swanson v. Scott, No. 2:17-CV-67-FtM-99MRM, 2018 WL 3817760, at *6 (M.D. Fla. Aug. 10, 2018) (citing Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010)). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest.'" Lee, 284 F.3d at 1195 (quotation omitted); see also Brown, 608 F.3d at 734. "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007).

"'The essence of qualified immunity analysis [as to arguable probable cause] is the public official's objective reasonableness, regardless of his underlying intent or motivation.' 'The standard is an objective one, and therefore does not include an inquiry in the officers' subjective intent or beliefs[,]" which are irrelevant. Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010) (per curiam) (internal quotations omitted). The proper focus is on "whether [the arresting officer] violated clearly established law in making the

arrest[] based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime." Id. at 1303 n.8. Thus, "what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) (collecting cases).

In making an arrest affidavit or seeking an arrest warrant, "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). An officer may not "choose to ignore information that has been offered to him or her . . . [or] conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts . . . ." Kingsland, 382 F.3d at 1229. Indeed, "[a] police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, . . . it is unclear whether a crime [has] even taken place." See BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (alterations added); see also Ahlers v. Schebil, 188 F.3d 365, 372 (6th Cir. 1999) ("[O]fficers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone."). Although officers "need not conduct a 'mini-trial' before making an arrest, . . . probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (internal citations omitted). However, "[a]n officer does not have to take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" See Williams v. City of Homestead, Fla., 206 Fed. Appx.

886, 888 (11th Cir. 2006) (quoting <u>Tillman v. Coley</u>, 886 F.2d 317, 321 (11th Cir. 1989)).

Moreover, "in determining whether probable cause to arrest exists, an officer must consider all facts and circumstances within that officer's knowledge, including facts and circumstances conclusively establishing an affirmative defense." <u>See</u> <u>Williams v. Sirmons</u>, 307 Fed. Appx. 354, 359 (11th Cir. 2009). Indeed, officers are not permitted "to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." <u>See</u> <u>Kingsland</u>, 382 F.3d at 1228 (citing <u>Sevigny v. Dicksey</u>, 846 F.2d 953 (4th Cir. 1988)). Finally, "whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." <u>Brown</u>, 608 F.3d at 735 (citations omitted).

Where a federal claim of malicious prosecution is based on alleged false statements or omissions by the officer in an affidavit supporting an arrest warrant, the Eleventh Circuit has explained:

> [a] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit. A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself. Omissions that are not reckless, but are instead negligent, or insignificant and immaterial, will not invalidate a warrant. Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause.

<u>Madiwale v. Savaiko</u>, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (internal citations and quotations omitted); <u>see</u> <u>also</u> <u>Smith v. Sheriff, Clay County, Fla.</u>, 506 Fed. Appx. 894, 898 (11th Cir. 2013); <u>Daniels v. Bango</u>, 487 Fed. Appx. 532, 537 (11th Cir. 2012). Likewise, in the context of falsities contained in an affidavit supporting an arrest warrant, the Supreme Court has stated that

> [t]he requirement that a warrant not issue but upon probable cause,
> supported by Oath or affirmation, would be reduced to a nullity if a police
> officer was able to use deliberately falsified allegations to demonstrate
> probable cause, and, having misled the magistrate, then was able to remain
> confident that the ploy was worthwhile.

Franks v. Delaware, 438 U.S. 154, 168 (1978). Accordingly, "[u]nder Franks, a police officer violates the Constitution if, in order to obtain a warrant, [he] perjures [himself] or testifies in reckless disregard of the truth." Kelly, 21 F.3d at 1554. In such settings, the officer would not be protected by qualified immunity. Id. at 1555.

Importantly, the Eleventh Circuit has held that unlike in the false arrest context (where so long as there is probable cause to believe the individual committed a criminal offense, there can be no false arrest even if there is no probable cause for other offenses, or even all announced charges), "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." Elmore v. Fulton Co. Sch. Dist., 605 Fed. Appx. 906, 914-915 (11th Cir. 2015) (citing Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007); Johnson v. Knorr, 477 F.3d 75, 83 (3d Cir. 2007); Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998)). Accordingly, as the Court evaluates Robbins' Motion to dismiss the malicious prosecution claim against him, the Court must evaluate whether Robbins had arguable probable cause to arrest Rhodes for schemes to defraud pursuant to Florida Statutes section 817.034(4)(a)3, and then separately evaluate whether Robbins had arguable probable cause to arrest Rhodes for the seven counts of false and fraudulent insurance claims pursuant to Florida Statutes section 817.234(1)(a)1.

## V. Discussion

### a. Affidavit in Support of Arrest Warrant

In support of Robbins' argument that he had arguable probable cause to arrest Rhodes and thus is entitled to qualified immunity, Robbins attached to his Motion a copy of the Affidavit for Arrest Warrant he submitted to Judge Moran.  See Doc. 23-1 (Affidavit for Arrest Warrant).   In his Motion, he contends that the "Affidavit for Arrest Warrant speaks for itself.   The Affidavit for Arrest Warrant contains sufficient statements that a reasonable officer in these circumstances would have believed that there was probable cause to charge [Rhodes] with the offenses listed under Sections 817.234(1)(a)(1) and 817.034."   Motion at 8-9.   Before addressing the effect of Robbins' Affidavit for Arrest Warrant on Rhodes' malicious prosecution claim, the Court must determine whether it may consider this document in ruling on Robbins' Motion.

In resolving a Rule 12(b)(6) motion to dismiss, "it is generally true that the scope of the review must be limited to the four corners of the complaint."  Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).  As such, if the Court reviews matters outside the pleadings, it ordinarily must convert the motion to one for summary judgment under Rule 56.  See Rule 12(d). However, a court may take judicial notice of matters of public record, including arrest warrants, and consider those facts in resolving a motion to dismiss.  See McDowell Bey v. Vega, 588 Fed. Appx. 923, 926 (11th Cir. 2014) (affirming a district court's decision to take judicial notice of the "Clerk's docket in the underlying criminal case[, which] demonstrate[d] that two warrants were issued for the Plaintiff's arrest" in dismissing a claim under 42 U.S.C. § 1983) (citation omitted); Brivik v. Law, 545 Fed. Appx. 804, 806

(11th Cir. 2013) ("Upon reviewing the complaint and Officer Law's arrest affidavit attached to her motion to dismiss, we hold that the district court properly granted Officer Law's motion to dismiss."); Perez v. Harrelson, No. 6:15–cv–879–Orl–37GJK, 2016 WL 866590, at *6, n. 6 (M.D. Fla. Mar. 7, 2016) (taking judicial notice of an arrest warrant attached to a motion to dismiss under the public records exception without converting it into a summary judgment motion) (citing Halmos v. Bomardier Aerospace Corp., 404 Fed. Appx. 376, 377 (11th Cir. 2010)). In fact, pursuant to Rule 201(c)(2) of the Federal Rules of Evidence, "[t]he court must take judicial notice if a party requests it and the court is supplied with the necessary information." Notably, in the Response, Rhodes does not dispute that the Court can take judicial notice of the Affidavit for Arrest Warrant, nor does he object to the Court's consideration of its contents. Accordingly, because Robbins relies on and has supplied the Court with the Affidavit for Arrest Warrant, which qualifies as a public record, the Court will take judicial notice of this document in evaluating Robbins' Motion. See Motion at 4 n.3.

### b. False Arrest verses Malicious Prosecution

Turning to the substance of Robbins' Motion, the Court begins by rejecting Robbins' characterization of Rhodes' Third Amended Complaint as alleging a false arrest claim. Motion at 9-10. As referenced above, an arrest without a warrant and lacking probable cause can serve as the basis of a false arrest claim. Brown, 608 F.3d at 734. However, where an individual is arrested pursuant to a warrant, and the individual alleges the warrant was invalid, then the individuals' claim for relief should be that of malicious prosecution, rather than false arrest. See Carter, 557 Fed. Appx. at 906; Harris, 2017 WL 6336330, at *5. Accordingly, the Court concludes that Rhodes' allegations support a

malicious prosecution claim against Robbins rather than a false arrest claim. Therefore, the Court rejects Robbins' argument that Rhodes insufficiently pled a false arrest claim, and therefore the action should be dismissed. Motion at 9-10.[6]

### c. Scheme to Defraud Charge Against Rhodes

Rhodes argues Robbins is not entitled to qualified immunity because he lacked arguable probable cause to arrest him. Assuming, as the Court must, the truth of the facts alleged in Rhodes' Third Amended Complaint, and drawing all reasonable inferences in his favor, see Iqbal, 556 U.S. at 687; Randall, 610 F.3d at 705, along with taking judicial notice of the Affidavit for Arrest Warrant, the Court concludes that Robbins had arguable probable cause to arrest Rhodes for schemes to defraud in violation of Florida statute section 817.034(4)(a)3.

In the Affidavit for Arrest Warrant, Robbins stated that a O.V., a patient of Rhodes, reported to Robbins that she

> had expressed concern several times when signing paper work [sic] for services that were not rendered [by Rhodes]. RHODES and his staff personally assured her that the paper work [sic] would be submitted correctly to the insurance company, but it was not. [O.V.] sent RHODES

---

[6] In this context, the Court also rejects Robbins' argument that pursuant to Florida Statutes section 768.28(9)(a), he is immune from suit. Motion at 10. Generally, section 768.28(9)(a) grants sovereign immunity to a state officer acting in the course of his employment, unless the officer acted in bad faith or with malice. See FLA. STAT. § 768.28(9)(a). However, "state law sovereign immunity has no application to claims, in federal court, under Section 1983." Eiras v. Florida, 239 F. Supp. 3d 1331, 1339 (M.D. Fla. 2017) (citing Hufford v. Rodgers, 912 F.2d 1338, 1341 n.1 (11th Cir. 1990)). Therefore, Robbins' reference to and reliance on Florida Statutes section 768.28(9)(a) is misplaced.

The Court further rejects Robbins' argument that he did not violate Rhodes' clearly established constitutional right to be free from unreasonable seizures because he was performing "duties according to Section 626.989, Fla. Statutes, and under the direction of the [Florida] Division [of Insurance Fraud.]" Motion at 5. Generally, Florida Statutes section 626.989 grants authority to Robbins, as an officer with the Florida Division of Insurance Fraud, to conduct investigations against individuals he believes to be engaged in insurance fraud. See FLA. STAT. § 626.989. Robbins' investigation against Rhodes pursuant to this statute supports a conclusion that Rhodes was acting within the scope of his discretionary authority. See Webster, 228 Fed. Appx. at 848; Lee, 284 F.3d at 1192. However, that Robbins was acting pursuant to the discretionary authority granted to him under the statute does not resolve the question of whether Robbins' actions violated Rhodes' constitutional rights. As such, Robbins' reliance on Florida Statutes section 626.989 is insufficient to fully address whether he is entitled to qualified immunity.

> correspondence asking him to correct the billing situation but instead he called her asking her to meet to discuss this in person. RHODES told her that he would "make [her] happy."

Affidavit for Arrest Warrant at 2. Robbins also stated in the Affidavit for Arrest Warrant that Rhodes "would . . . complete his notes showing patients were receiving electrical stimulation, manual therapy and traction when in fact they never received this treatment." Id. at 3. More specifically, in the Affidavit for Arrest Warrant, Robbins detailed that he received a complaint from an insurance provider that Rhodes was billing for manual therapy coded as CPT 97140 but performed by individuals with expired massage licenses. Id. at 2, 3. Robbins asserted that these unlicensed individuals "provided treatment, which required being [administered by] a Licensed Massage Therapist or a Registered Chiropractic Assistant. By doing so, bills were submitted to numerous insurance companies for services that should not have been performed." Id. at 2. Similarly, Robbins asserted that Rhodes "was submitting his notes for billing which indicated more units of treatment than what was actually provided," id., and that Rhodes directed one of his employees

> to show more units of manual therapy treatment in her notes so it matched what RHODES put in his notes. [The employee] would put two (2) units of therapy although she only provided one (1) unit. By doing this, RHODES caused bills to be submitted to the insurance companies for services that were not rendered.

Id.

In his Third Amended Complaint, Rhodes contends that Robbins conducted his investigation with a "total disregard and misunderstanding of the law." Third Amended Complaint at ¶ 18. With regard to Robbins' allegations that Rhodes billed insurance carriers for manual therapies performed by unlicensed therapists, Rhodes asserts that

Florida law permits a

> chiropractic physician [to] bill for . . . manual physical therapy when it is
> performed by medical assistants incidental to the practice of the physician.
> Indeed, this type of billing arrangement has been sanctioned by the Florida
> courts. See State Farm Mutual Automobile Insurance Company vs.
> Universal Medical Center of South Florida, Inc., 881 So.2d 557, 560-561
> (Fla. 3d DCA 2004).

Id. at ¶ 22. Likewise, in regard to Robbins' charge that Rhodes was unlawfully billing for

additional units of manual therapy, Rhodes alleges that the federal government's Centers

for Medicare and Medicaid Services Manual, which is "used by all insurance companies

for construing and interpreting [medical billing codes, includes] an '8-minute' rule for

manual therapy. Under this rule, as long as the manual therapy session lasts at least 23

minutes, then a provider may bill for two units." Id. at ¶ 27. As such, Rhodes asserts that

> it appears [Robbins] and those he interviewed (including a therapist who
> worked for [Rhodes] . . . ) operated under the incorrect belief that each unit
> had to consist of an entire 15-minute session of hands on therapy, and
> unless the session lasted 30 minutes, then only one unit of manual therapy
> could be billed.

Id. at ¶ 28. Therefore, Rhodes alleges that Robbins was incorrect in concluding that

Rhodes "violated the law by billing for manual therapy" by unlicensed therapists, and was

similarly incorrect in determining that Rhodes "overbilled" patients as it related to units of

therapy. Id. at ¶¶ 23, 28. In this context, Rhodes acknowledges that the defense of

qualified immunity protects from suit "all but the plainly incompetent or those who

knowingly violate the law." Carr, 338 F.3d at 1259. However, Rhodes argues that

Robbins' lack of knowledge regarding relevant insurance law "can be deemed nothing

other than plainly incompetent." Response at 4. The Court does not agree.

The Supreme Court has stated that "[t]he protection of qualified immunity applies

regardless of whether the government official's error is a mistake of law, a mistake of fact,

or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (citations and quotations omitted). Cf. Heien v. North Carolina, 135 S. Ct. 530, 537 (2014) (relying on precedent associated with the doctrine of qualified immunity to hold that in the context of a motion to suppress, an officer's reasonable mistake of law could establish reasonable suspicion to conduct an investigatory stop). See also Smith v. Fairburn, 679 Fed. Appx. 916, 923 (11th Cir. 2017) ("a reasonable mistake of law does not destroy probable cause"); Williams v. Russo, 636 Fed. Appx. 527, 531 (11th Cir. 2016) (qualified immunity applies regardless of mistake of law, mistake of fact, or mistake based on mixed questions of law and fact).

Here, taking the allegations in Rhodes' Third Amended Complaint as true and drawing all reasonable inferences in his favor, see Iqbal, 556 U.S. at 687; Randall, 610 F.3d at 705, the Court concludes that Rhodes has not sufficiently alleged that Robbins' mistake of law was unreasonable, or that he otherwise lacked arguable probable cause to arrest Rhodes for schemes to defraud under Florida law. First, the Florida case cited by Rhodes, State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. of S. Fla., Inc., 881 So.2d 557, 560-561 (Fla. 3d DCA 2004) (Universal Med. Ctr. of S. Fla., Inc.), is a Florida state appellate decision addressing a dispute between insurance carriers in which the court answered a narrow certified question about medical assistants.[7] The decision sheds no light on whether "manual therapy" performed by an unlicensed massage therapist can be billed under billing code CPT 97140. Indeed, at least one insurance

---

[7] The certified question before the court was

[w]hether a person defined as a medical assistant under section 458.3485, Florida Statutes (2001), but not licensed as a physical therapist under chapter 486, Florida Statutes (2001), may 'lawfully render' any of the physical therapy modalities enumerated in section 486.021(11), Florida Statutes (2001) for purposes of qualifying for payment of assigned personal injury protection benefits under section 627.736(5)(a), Florida Statutes (2001).

Universal Med. Ctr. of S. Fla., Inc., 881 So. 2d at 559.

provider believed, and reported to Robbins, that Rhodes practice of doing so was unlawful. Affidavit for Arrest Warrant at 2. The Universal Med. Ctr. of S. Fla., Inc. decision similarly fails to establish whether the specific treatments provided by the unlicensed individuals, and for which Rhodes submitted insurance claims, were in fact of the sort required to be provided by a licensed therapist or registered chiropractic assistants.[8] As such, it fails to support a conclusion that Rhodes' assessment was "plainly incompetent." Moreover, Rhodes has not directed the Court to any other authority of which Robbins should have been aware regarding whether unlicensed therapists could perform the specific manual therapies at issue, or whether such therapies performed by unlicensed therapists could be billed under the CPT code used by Rhodes, and the Court has been unable to find any legal authority addressing the same.

Similarly, Rhodes has not directed the Court to any legal precedent, nor was the Court able to find any establishing that Rhodes' apparent double billing for manual therapy was indeed lawful, and that Robbins' conclusion otherwise represented an unreasonable mistake of law. Regardless of whether Medicare or other insurance regulations allow a provider to "bill for two units" if the session lasts for at least twenty-three minutes, Robbins' Affidavit for Arrest Warrant reflects that a witness told him Rhodes was billing for more units of manual therapy than he provided. Affidavit for Arrest Warrant at 2. It further reflects that the employee witness told Robbins that Rhodes directed her "to show more units of manual therapy" than she actually provided. Id. at 2. Perhaps, as Rhodes suggests, this witness was mistaken as to the required length of a

---

[8] The Universal Med. Ctr. of S. Fla., Inc. decision has been referenced by only one other court, see State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., No. 6:06-cv-1757-Orl-GJK, 2008 WL 11337326, at *6 (M.D. Fla. Dec. 18, 2008), again in a dispute between insurance carriers and not in the context of a criminal fraud charge.

treatment unit, but that does not undermine Robbins' reliance on her factual representations. See e.g., Bright v. Thomas, No. 17-12369, 2018 WL 5115420, at *3 (11th Cir. Oct. 19, 2018) ("It is well established that police officers may generally rely on eyewitness accounts and victim statements to establish probable cause."); Rankin, 133 F.3d at 1441 ("an officer is entitled to rely on a victim's criminal complaint as support for probable cause."); Ermini v. Scott, 249 F. Supp. 3d 1253, 1271 (M.D. Fla. 2017) ("An officer may normally rely on a victim's criminal complaint to support probable cause."); Ruszala v. Walt Disney World Co., 95 F. Supp. 2d 1323, 1326 (M.D. Fla. 2000) ("In determining trustworthiness, police officers are generally entitled to rely on the veracity of information supplied by the victim of a crime."). Accordingly, the Court is not persuaded that Rhodes has sufficiently alleged that Robbins' mistake of law rises to the level of the "plainly incompetent." Carr, 338 F.3d at 1259.

Moreover, the Court concludes that a reasonable officer "in the same circumstances and possessing the same knowledge as [Robbins] could have believed that probable cause existed to arrest." Lee, 284 F.3d at 1195; see also Brown, 608 F.3d at 734. Based on the information contained in the Affidavit for Arrest Warrant, where Robbins details reports to him by Rhodes' patients, employees, and an insurance provider, a reasonable officer certainly could have believed that Rhodes was engaged in a scheme to defraud in violation of Florida Statute section 817.034(4)(a)3.

As detailed in Robbins' Affidavit for Arrest Warrant, one of Rhodes' patients reported to Robbins that she believed Rhodes was billing her insurance company for services not rendered. Affidavit for Arrest Warrant at 2. The patient further reported to Robbins that upon attempting to clarify these matters with Rhodes, he did not immediately

seek to fix the billing issues, but rather sought to meet with her in person and promised he would make her "happy." Id. Additionally, Robbins received a complaint from an insurance provider that Rhodes was unlawfully billing for manual therapies performed by unlicensed individuals. Id. at 2, 3. Finally, one of Rhodes' employees reported to Robbins that Rhodes submitted bills for more units of manual therapy than he actually performed, and that he also directed the employee to record more units of therapy than she performed. Id. at 2.

Given this information, regardless of the alleged gaps in Robbins' legal knowledge, the Court concludes that a reasonable officer "in the same circumstances and possessing the same knowledge as [Robbins] could have believed that probable cause existed to arrest" Rhodes for violating Florida Statute section 817.034(4)(a)3. See Lee, 284 F.3d at 1195; see also Brown, 608 F.3d at 734. As such, and to the extent Rhodes' malicious prosecution claim is based on Rhodes' arrest for schemes to defraud, Robbins is entitled to qualified immunity.

### d. False and Fraudulent Insurance Charges Against Rhodes

In addition to arresting Rhodes for engaging in a scheme to defraud, Robbins also arrested Rhodes on seven charges of false and fraudulent insurance claims. See Affidavit for Arrest Warrant at 2. Rhodes alleges that Robbins omitted information from the Affidavit for Arrest Warrant as to these charges, and also included false statements, see Third Amended Complaint at ¶ 12, and as such, cannot claim qualified immunity. Response at 6. Again, taking as true the allegations in Rhodes' Third Amended Complaint, and drawing all reasonable inferences in his favor, see Iqbal, 556 U.S. at 687; Randall, 610 F.3d at 705, the Court determines that as to Rhodes' allegations that

Robbins omitted information from the Affidavit for Arrest Warrant, Rhodes has failed to sufficiently plead that Robbins lacked arguable probable cause to arrest Rhodes for false and fraudulent insurance claims. However, as to Rhodes' allegations that Robbins included falsities in the Affidavit for Arrest Warrant, the Court determines Rhodes' allegations sufficiently allege that Robbins violated Rhodes' constitutional rights.

In his Third Amended Complaint, Rhodes alleges that the warrant affidavit Robbins presented in support of Rhodes' arrest "was full of false statements and material omissions . . . ." Third Amended Complaint at ¶ 12. In support of the charges of false and fraudulent insurance claims, Rhodes notes that Robbins stated that he interviewed seven of Rhodes' patients. Affidavit for Arrest Warrant at 3. He reported that "[a]ll of the patients had unauthorized billing submitted to their insurance companies for treatment/therapies they never received." Id. However, Rhodes alleges that four of these patients "flatly denied" what Robbins swore they told him. Third Amended Complaint at ¶ 13. As such, Rhodes alleges Robbins' "inclusion of any alleged fraud by [Rhodes] as to these patients was knowingly false." Id. Likewise, Rhodes alleges that for the three other patients, Robbins omitted relevant information, the inclusion of which would have undermined a conclusion that Rhodes had arguable or actual probable cause to arrest Rhodes. Id. at ¶¶ 14-17, 34. In response, Robbins argues that Rhodes' allegations are at best, conclusory, that the "Affidavit for Arrest Warrant speaks for itself," and that it "contains sufficient statements that a reasonable officer in [his] circumstances would have believed there was probable cause to charge" Rhodes with various counts of insurance fraud. Motion at 6, 8-9.

When an officer submits an affidavit in support of an arrest warrant, the warrant affidavit violates the Fourth Amendment and thus could give rise to a malicious prosecution claim where the affidavit contains intentional omissions, or omissions made with a "reckless disregard for the accuracy of the affidavit." Madiwale, 117 F.3d at 1326-27. Courts in this Circuit have held that an omission can be deemed reckless where "the inclusion of the omitted facts would have prevented a finding of probable cause." Id. at 1326–27; see also Smith, 506 Fed. Appx. at 898; Daniels, 487 Fed. Appx. at 537. Here, the Court concludes with regard to Rhodes' claim that Robbins intentionally omitted information associated with three patients, the inclusion of the omitted facts would not have undermined a determination that Robbins had arguable probable cause to arrest Rhodes for false and fraudulent insurance claims.

First, as to patient D.B., Rhodes alleges that Robbins did not include in the Affidavit for Arrest Warrant accurate dates regarding D.B.'s pregnancy as it related to treatment Rhodes allegedly fraudulently billed to her insurance company. Third Amended Complaint at ¶ 15. In the Affidavit for Arrest Warrant, which was dated April 3, 2014, Robbins averred that D.B. reported to him that "[t]here was ____[9] in unauthorized bills submitted to [her insurance company] for Traction Therapy, Electrical Muscle Stimulation, Massage Therapy and Manual Therapy. [D.B.] has been pregnant since May 2013. She has not had electrical stimulation since then but her insurance company has been billed for the service." Affidavit for Arrest Warrant at 3. However, Rhodes alleges that "[i]n reality, [D.B.'s] medical records, of which Defendant had copies, reflect that she did not advise [Rhodes] of her pregnancy until August of 2013. Her child was born in April of

---

[9] The monetary sums are redacted from the Affidavit for Arrest Warrant.

2014." Third Amended Complaint at ¶ 15. As such, it appears that D.B. may have learned she was pregnant in August 2013, rather than May of that year. Therefore, Robbins added two to three months to the period during which D.B. was pregnant (May 2013-August 2013), thus suggesting she was pregnant for eleven months.

However, even if Robbins had included the correct information in the affidavit regarding when D.B. reported her pregnancy to Rhodes, the Court is not persuaded that the inclusion of this information would have undermined Robbins' determination that he had arguable probable cause to arrest Rhodes. Robbins stated in the affidavit that D.B. informed him that numerous charges for unauthorized treatment were submitted to her insurance company. Likewise, she informed Robbins that her insurance company had been billed for services she had not received since May 2013. Regardless of the specific dates of D.B.'s pregnancy, or the date upon which she informed Rhodes of the same, a reasonable officer "in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest" Rhodes of making false and fraudulent insurance claims related to D.B. during the eleven month period highlighted in the Affidavit for Arrest Warrant. See Lee, 284 F.3d at 1195; see also Brown, 608 F.3d at 734; Rankin, 133 F.3d at 1441.

Second, as to patient O.V., Rhodes alleges that Robbins intentionally omitted from the Affidavit for Arrest Warrant O.V.'s admission to another health care provider that she had received specific treatments, where she had otherwise told Robbins that her insurance company had received unauthorized bills for those types of treatments. See Third Amended Complaint at ¶ 16. In the Affidavit for Arrest Warrant, Robbins stated that O.V. reported to him that a "total of _____ in unauthorized treatment was submitted to [her

insurance company]. The treatment consisted of Ultrasound Therapy, Traction Therapy, and Manual Therapy." Affidavit for Arrest Warrant at 3. Likewise, O.V. informed Robbins that there were several times where she expressed concern to Rhodes and his staff that she was "signing paper work [sic] for services that were not provided." Id. at 2. O.V. further reported that Rhodes and his staff would assure her that they would file the paperwork correctly with her insurance company, but failed to do so. When O.V. asked Rhodes to fix the problem, "he called her asking her to meet to discuss this in person. RHODES told her that he would 'make [her] happy.'" Id. However, Rhodes alleges that while O.V. reported to Robbins that

> she was billed for certain services that she claims were not performed[, she] had an independent medical evaluation . . . done by another doctor in November of 2013 and during that evaluation (a copy of which [Robbins] possessed), she stated to that doctor that she was receiving the treatments at issue on a regular basis.

Third Amended Complaint at ¶ 16. Again, the Court is not convinced that the inclusion of this information in the affidavit would undermine a determination that Robbins had arguable probable cause to arrest Rhodes for false and fraudulent insurance claims as to this patient.

First, even if O.V. told another doctor she was receiving ultrasound therapy, traction therapy, and manual therapy, Rhodes' allegations challenging the information in the Affidavit for Arrest Warrant do not establish that Rhodes was the doctor providing those treatments. Even if Rhodes was the doctor providing the treatments that O.V. stated she was receiving such treatments "on a regular basis" does not mean she received each treatment for which Robbins billed her insurance company. This is particularly true given the fact that O.V. affirmatively told Robbins that her insurance

company had been improperly billed for treatments, and that when she raised her concerns with Rhodes and his staff, the staff were initially unresponsive and Rhodes somewhat cryptic. As such, Robbins reasonably could have concluded, based on the information he included in the Affidavit for Arrest Warrant, along with the information he allegedly omitted, that Rhodes was submitting false and fraudulent insurance claims as to O.V. See Rankin, 133 F.3d at 1441.

Finally, Rhodes alleges that Robbins intentionally omitted from the Affidavit for Arrest Warrant information indicating that patient B.L., who reported to Robbins that her insurance company was billed for treatment she did not receive, had actually signed paperwork at Rhodes' office indicating she had received such treatment. Third Amended Complaint at ¶ 17. Here, Robbins stated in the Affidavit for Arrest Warrant that B.L. reported to him that

> [t]here was ____ in unauthorized bills submitted to [her insurance company] for Ultrasound Therapy, Traction Therapy and Manual Therapy. [B.L.] said that RHODES told her he will not bill her insurance company for future treatments on the roller table (traction). [B.L.] said Rhodes told her this because he has been billing the insurance company for the roller table treatment and she was not receiving the treatment.

Affidavit for Arrest Warrant at 3. However, Rhodes alleges that B.L. "signed paperwork at [Rhodes'] office (a copy of which [Robbins] possessed) attesting the services 'were actually rendered . . . .'" Third Amended Complaint at ¶ 17. As with the previous two patients, the Court is not convinced that the inclusion of this information in the Affidavit for Arrest Warrant would have prevented a reasonable officer from believing he had arguable probable cause to arrest Rhodes for false and fraudulent insurance claims as to B.L.

Robbins asserted in the affidavit that B.L. reported to him that unauthorized bills were submitted to her insurance company. Additionally, she reported that Rhodes told her that he had been billing her insurance company for roller table treatment he had not otherwise provided to her, and therefore, he would not charge her for future roller table treatment services. Notably, another patient, O.V., had reported to Robbins her concerns that while a patient of Rhodes, she was asked to, and signed, paperwork for services she had not received, and that Rhodes' response to O.V.'s concerns about this issue was unsatisfactory. <u>See</u> Affidavit for Arrest Warrant at 2. A reasonable officer possessing the information provided to him by both B.L. and O.V., even with the additional information that B.L. signed paperwork attesting that she did receive roller table services, could nonetheless conclude that Rhodes had previously unlawfully billed B.L.'s insurance company for roller table services, but was now providing those services to her for free. Moreover, even if B.L. did sign paperwork attesting that she received these services, this information does not undermine Rhodes' alleged statement to B.L. that he had been billing her insurance company for unprovided roller table treatments, and therefore would not bill her for future roller table treatments. As such, this additional information would not have undermined a reasonable officer's determination that arguable probable cause existed to arrest Rhodes for filing false and fraudulent insurance claims as to B.L.

In partial summary, to the extent Rhodes bases his malicious prosecution claim against Robbins on the information Robbins allegedly omitted from the Affidavit for Arrest Warrant, Rhodes has not sufficiently alleged that Robbins' omissions rose to the level of violating Rhodes' constitutional rights. As such, and if standing alone, Robbins would be entitled to qualified immunity for bringing charges of false and fraudulent insurance claims

30

against Rhodes.  However, as to the four other charges of false and fraudulent insurance claims, where Rhodes alleges Robbins included falsities in his Affidavit for Arrest Warrant, the Court concludes Rhodes has sufficiently alleged that Robbins' actions violated Rhodes' constitutional rights.

When an officer includes falsehoods or fabrications in an affidavit in support of a warrant, the officer can be deemed to have violated the Fourth Amendment.  See Franks, 438 U.S. at 168; Carter, 557 Fed. Appx. at 907-08; Madiwale, 117 F.3d at 1326; Kelly, 21 F.3d at 1554; Woodring v. Hart, No. 614-cv-1067-Orl-37TBS, 2015 WL 2238056, at *3 (M.D. Fla. May 12, 2015).[10]  However, in order to sufficiently plead a claim of malicious prosecution based on alleged falsities or fabrications in an affidavit, the plaintiff must "allege facts to plausibly suggest that [the defendant] did not believe or appropriately accept as true his ultimate assertion that [the plaintiff] was guilty.  This requires some evidence establishing [the defendant's] subjective belief about the veracity of the assertions made in his affidavit."  Carter, 557 Fed. Appx. at 910.  Accordingly,

> [a]n officer loses qualified immunity if the plaintiff can prove that the officer perjured himself — that is, put forth information he did not believe or accept as true — in order to obtain a search warrant.  An officer does not lose qualified immunity, however, if all the plaintiff can prove is that the officer made recklessly false statements in order to obtain a search warrant.

Id. at 908 (internal citations omitted).  Here, the Court concludes that Rhodes has sufficiently pled that Robbins falsified or fabricated information in the affidavit, thereby undermining any argument that he had either actual or arguable probable cause to arrest Rhodes for at least four of the charges of false and fraudulent insurance claims.

---

[10] As to this point, the law is clearly established.  See Franks, 438 U.S. at 168; Carter, 557 Fed. Appx. at 907-08; Madiwale, 117 F.3d at 1326; Kelly, 21 F.3d at 1554.  Nor does Robbins challenge this position.

In his Third Amended Complaint, Rhodes alleges that Robbins' Affidavit for Arrest Warrant "was full of false statements . . . ." Third Amended Complaint at ¶ 12. In particular, he alleges that four of the seven patients Robbins interviewed "flatly denied" what Robbins averred in the affidavit they reported to him. Id. at ¶ 13. Therefore, Rhodes alleges that Robbins' allegations of fraud against him as it relates to these four patients were "knowingly false." Id. Indeed, Rhodes alleges that Robbins "knowingly and deliberately . . . made false statements . . . in his application for the warrant for" Rhodes arrest, id. at ¶ 34, and that Robbins acted with malice. Id. at ¶ 38. These allegations are sufficient to allow for a reasonable inference that Robbins "perjured himself – that is, put forth information he did not believe or accept as true – in order to obtain" the warrant for Rhodes' arrest. Carter, 557 Fed. Appx. at 908. See also, Stepanovich v. City of Naples, Fla., No. 2:14-cv-270-FtM-29MRM, 2016 WL 4920280, at *6-7 (M.D. Fla. Sept. 15, 2016) (plaintiff's allegations that officer fabricated evidence sufficient to support malicious prosecution claim); McMillan v. Johnson, No. CV-93-A-699-N, 1994 WL 904652, at *9 (M.D. Ala. Feb. 18, 1994) (where plaintiff "specifie[d] exactly which evidence was fabricated and which evidence was suppressed," plaintiff's allegations were "sufficient to satisfy the 'lack of probable' cause element of a malicious prosecution claim"). Cf. Carter, 557 Fed. Appx. at 910 (plaintiff's allegations insufficient to support malicious prosecution claim where plaintiff offered nothing to suggest defendant was lying and never specified "what evidence was presented to the magistrate that was supposedly fabricated"); Woodring, 2015 WL 2238056 at *3 (plaintiff's allegations were insufficient to support a malicious prosecution claim where plaintiff failed to plead "factual allegations bearing on the officer's 'subjective belief about the veracity of the assertions made in his affidavit'

such as a 'possible motive' for the officer to lie."). Accordingly, Rhodes has sufficiently alleged that Robbins included falsities in the Affidavit for Arrest Warrant, thereby violating the Fourth Amendment.

### VI.    Conclusion

Having examined all the charges Robbins brought against Rhodes in the Affidavit for Arrest Warrant, and based on the allegations in Rhodes' Third Amended Complaint, the Court concludes that Robbins had arguable probable cause to arrest Rhodes for a scheme to defraud, and arguable probable cause for at least three charges of false and fraudulent insurance claims. As such, and if Robbins had only arrested Rhodes for these four charges, Robbins would be entitled to qualified immunity in the entirety from Rhodes' malicious prosecution action against him. However, Rhodes' Third Amended Complaint plausibly alleges that based on the falsities Robbins allegedly included in the Affidavit for Arrest Warrant, Robbins lacked arguable probable cause to arrest Rhodes for the remaining four charges of false and fraudulent insurance claims. While Robbins may have had arguable probable cause to arrest Rhodes for some of the charges detailed in the Affidavit for Arrest Warrant, "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." Elmore, 605 Fed. Appx. at 915. See also Phillips, 2019 WL 3586179 at *8; Rau v. Schwizer, Civil Action No. 1:10-CV-2678-SCJ, 2015 WL 12868075, at *5, *9 (N.D. Ga. Dec. 22, 2015). Robbins lacked arguable probable cause to arrest Rhodes for four of the false and fraudulent insurance claims against Rhodes based on the alleged falsities he included in the Affidavit for Arrest Warrant. Therefore, Robbins cannot obtain a dismissal of Rhodes' entire malicious prosecution claim against him on the basis of qualified

immunity. Rhodes' Third Amended Complaint sufficiently alleges a claim of malicious prosecution against Robbins, to the extent Robbins included falsities in the Affidavit for Arrest Warrant.[11]  Accordingly, Robbins' Motion to Dismiss is due to be granted, in part, and denied, in part.

In light of the foregoing, it is hereby **ORDERED**:

Defendant Paul Robbins' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 23) is **GRANTED** in part and **DENIED** in part.

    a. The Motion is **GRANTED** to the extent that Rhodes' claims based on his arrest for the scheme to defraud charge and the false and fraudulent insurance charges related to patients O.V., B.L. and D.B. are dismissed.

    b. The Motion is otherwise **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 13th day of March, 2019.

_Marcia Morales Howard_
**MARCIA MORALES HOWARD**
United States District Judge

lc26
Copies to:
Counsel of Record

---

[11] In so ruling, the Court notes that its decision in this Order does not preclude Robbins from reasserting his qualified immunity defense later in this action as the facts of the case become more developed. See Oladeinde v. City of Birmingham, 230 F.3d 1275, 1285 (11th Cir. 2000) ("We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.") (citation omitted).